# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

HENRY BENITEZ,

          Plaintiff,

   v.             9:15-CV-1179
                   (GLS/ATB)

JAMES P. HEALY, et al.,

          Defendants.

HENRY BENITEZ, Plaintiff, pro se
RYAN W. HICKEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

  This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge.  In this civil rights complaint, plaintiff alleges that multiple correctional officers violated his Eighth Amendment rights by using excessive force against him or failing to protect him during a "strip frisk" at Upstate Correctional Facility, as part of a conspiracy to retaliate against plaintiff for filing grievances. (Complaint ("Compl.") (Dkt. No. 1).

  Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 46, 47, 49).  Plaintiff has filed a response in opposition to the motion. (Dkt. No. 50).  For the reasons set forth below, this court will recommend granting the motion for summary judgment as to all claims against defendants Hyde, Maynard, Richter, St. Mary, and Truax, as well as the claims of excessive force, conspiracy, and one of the retaliation claims against defendant Healy.

This court will further recommend that defendant Healy's motion for summary judgment with regard to plaintiff's other retaliation claim be denied, because there are unresolved material issues of fact remaining as to the allegation that defendant Healy framed plaintiff for marijuana possession in retaliation for filing a grievance.

## I.    **Relevant Facts and Contentions**

On the morning of October 5, 2012, defendant Healy, an Upstate Correctional Officer, reported to plaintiff's cell in order to perform a cell search. (Dkt. No. 46-1, Def.'s Statement of Material Facts ("Def.'s Statement") at ¶ 2)[1].  Defendant Healy performed a pat frisk of plaintiff as part of the routine cell search procedure.  (*Id*. at ¶ 3).  After completing the pat frisk, defendant Healy advised the area supervisor, defendant Sergeant Maynard, that he had detected a suspicious lump in the waistband of plaintiff's pants. (Dkt. No. 46-3, "Healy Decl." at ¶¶ 7-8).  Defendant Maynard ordered defendant Healy to scan plaintiff in the Body Orifice Scanning System ("BOSS") chair[2], and to conduct a strip frisk of plaintiff. (Def.'s Statement at ¶ 4).

Defendants Healy and Richter escorted plaintiff to the BOSS chair and the designated strip frisk area. (*Id*. at ¶ 5).  The BOSS chair scan was negative. (*Id*. at 7).  Defendant Healy then escorted plaintiff into the strip frisk room, which is monitored by an overhead surveillance camera. (*Id*. at ¶ 8).  Once inside the strip frisk room, defendant Healy removed plaintiff's handcuffs and instructed him to face the wall. (*Id*.

---

[1] Unless otherwise noted, all citations to Defendants' Statement of Material Facts refer to facts that have been admitted by plaintiff. (Dkt. No. 50-1, Pl.'s Response to Def.'s Statement of Material Facts).

[2] The BOSS chair performs a non-invasive scan to detect the presence of metal objects concealed in an inmate's body cavities.  The BOSS chair does not detect non-metal contraband. (Def.'s Statement at ¶ 6).

at 9).  He then instructed plaintiff to remove items of clothing one at a time, so that he could inspect them for contraband. (Healy Decl. at ¶ 15; Dkt. No. 50-2, "Pl.'s Decl." at ¶ 17).  Plaintiff complied with defendant Healy's orders to remove his shoes, shirt, pants, and undershirt for inspection. (Healy Decl. at ¶ 15).

During the strip frisk, plaintiff and defendant Healy began to argue. (Healy Decl. at ¶ 19; Pl.'s Decl. at ¶ 19).  The parties disagree about the nature of this argument. Plaintiff contends that he complied with all of defendant Healy's orders and accuses him of harassment. (Pl.'s Decl. at ¶¶ 19, 20).  Defendant Healy contends that plaintiff reached his left hand into the waistband of his boxer shorts to remove contraband, and then hid that contraband in his closed left fist. (Healy Decl. at ¶ 16).  Healy further contends that plaintiff began to remove his boxer shorts without being ordered to do so, in an attempt to rush the strip frisk and distract from the object hidden in his left hand. (*Id*. at 17).  He also contends that plaintiff refused several direct orders to open both of his hands and place them flat against the wall.  (Healy Decl. at ¶¶ 18-22).

In order to gain control of the situation, defendant Healy used force against plaintiff, with the assistance of defendant Richter. (Pl.'s Decl. at ¶ 24; Healy Decl. at ¶¶ 23, 25). The parties disagree on the nature of that force.  Defendant Healy states that he initiated a body hold by wrapping his arms around plaintiff's torso to restrain him, and that plaintiff resisted. (Healy Decl. at ¶ 24).  During this struggle, plaintiff and defendant Healy went down to the floor, and plaintiff dropped the contraband from his hand. (Healy Decl. at ¶ 25).  While on the floor, defendant Healy restrained plaintiff's left arm, and defendant Richter restrained plaintiff's right arm. (*Id*.)

Plaintiff contends that defendant Healy never attempted a body hold. (Pl.'s Decl.

at ¶ 23).  Instead, plaintiff argues that he was facing the wall with his hands high against it, when defendant Healy grabbed plaintiff's left arm and repeatedly yanked it downward. (*Id*. at ¶ 24).  Defendant Richter then yanked plaintiff's right arm in the same manner. (*Id*. at ¶ 25).  These actions caused plaintiff to fall to the floor face-first.  Plaintiff contends that once on the floor, defendant Richter forcibly twisted plaintiff's right arm and slammed plaintiff's right elbow against the floor, and defendant Healy slammed plaintiff's forehead against the floor. (*Id*. at ¶¶ 26-27).

Defendant Maynard, who was stationed outside the strip frisk room door, radioed for assistance. (Def.'s Statement at ¶ 27).  Defendants Hyde, St. Mary, and Truax all responded and assisted with restraining plaintiff. (*Id*.).  Plaintiff contends that all three of these responding officers used excessive force: defendant Hyde punched plaintiff on the right side of the face; defendant St. Mary grabbed and forcibly squeezed plaintiff's Adam's apple; and defendant Truax maliciously handcuffed plaintiff's wrists tighter than necessary. (Compl. at ¶ 20-22).  Defendants contend that they merely held plaintiff's arms and legs, and handcuffed plaintiff in a normal manner once his arms were secured behind his back. (Dkt. No. 46-9, "St. Mary Decl." at ¶ 8; Dkt. No. 46-10, "Hyde Decl." at ¶ 8; Dkt. No. 46-11, "Truax Decl." at ¶ 7).

Once plaintiff was in handcuffs, the use of force ended. (Def.'s Statement at ¶ 29).  Eventually, defendant Healy removed plaintiff's handcuffs, and completed the remaining steps in the strip frisk procedure without incident. (*Id*. at ¶ 33).  Once plaintiff had dressed, defendants Healy and Richter escorted him to a holding pen, where he was offered a medical evaluation. (*Id*. at ¶¶ 34, 38).  While plaintiff was in the holding pen, defendant Healy completed the search of plaintiff's cell, and confiscated

4

paperwork relating to two other inmates' criminal and other legal proceedings. (Def.'s Statement at ¶ 37). Possession of this material was prohibited under Upstate rules. (*Id*.).

Defendants contend that, after plaintiff had left the strip frisk room, defendant Truax retrieved the contraband that plaintiff had dropped during the incident. (Truax Decl. at ¶ 9; Dkt. No. 46-4, "Maynard Decl." at ¶ 29). According to defendants, plaintiff had been hiding two balloons that contained approximately six grams of marijuana. (Truax Decl. at ¶ 10). Plaintiff contends that defendant Hyde dropped these two balloons after the incident as part of the plot to frame plaintiff. (Compl. at ¶ 23). To support this theory, plaintiff alleged that defendant Healy told him, "That's what you get for writing shit. Don't say shit to the nurse if you know what's good for you." (*Id*.)

Plaintiff was issued three misbehavior reports related to the incident: one related to the failure to comply with orders during the strip frisk; one related to the possession of contraband; and one for narcotics possession. (Def.'s Statement at ¶¶ 42-45). At his October 25, 2012 Tier III disciplinary hearing, plaintiff was found guilty of all charges contained in the three misbehavior reports, and placed on a restrictive diet. (Def.'s Statement at ¶ 46). Plaintiff appealed, and the hearing disposition was affirmed on January 16, 2013. (*Id*.).

## II.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.   **Excessive Force/Failure to Protect**

### A.    **Legal Standards**

#### 1.    **Excessive Force**

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  To sustain a claim of excessive force, a

plaintiff must still establish the objective and subjective elements of an Eighth

Amendment claim. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for

excessive force, a defendant's conduct must be "'inconsistent with the contemporary

standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted);

*Hudson*, 503 U.S. at 9. The malicious use of force to cause harm constitutes a per se

Eighth Amendment violation, regardless of the seriousness of the injuries. *Blyden*, 186

F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of

'cruel and unusual' punishments necessarily excludes from constitutional recognition

*de minimis* uses of physical force, provided that the use of force is not of a sort

repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted).

"'Not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22

(citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of

culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation

omitted). The Supreme Court has recently re-emphasized that the "core judicial

inquiry" is not whether a certain quantum of injury was sustained, but rather whether

the force was applied in a good faith effort to restore discipline, or whether it was

applied maliciously to cause harm, regardless of the seriousness of the injury. *Wilkins v.*

*Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010).

In determining whether defendants acted in a malicious or wanton manner, the

Second Circuit has identified five factors to consider: the extent of the injury and the

mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003). The extent of the injury may be considered as one factor in determining whether the use of force could plausibly have been thought "necessary" in a particular situation. *Wilkins v. Gaddy*, 130 S. Ct. at 37-38, 40. The extent of the injury may also give some indication of the amount of force applied and may ultimately be considered in determining damages if appropriate. *Id.*

### 2.    Failure to Protect

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

A correction officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate. *See, e.g., Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. May 24, 2010); *Cicio v. Graham,* No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. March 15, 2010). A law enforcement official has an affirmative duty to

intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be."); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence"). In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Jean Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted).

### B.    Application

There is no dispute that the defendants applied force to plaintiff during the course of the October 5, 2012 strip frisk. Defendants contend that the correctional officers used only the amount of force necessary to gain control of the non-compliant plaintiff while still protecting themselves from the threat of physical harm. (Maynard Decl., at ¶ 34). Plaintiff contends that defendants Healy, Richter, St. Mary, Hyde, and Truax maliciously and sadistically grabbed, pulled, jumped upon, punched, and choked him for the sole purpose of causing harm. (Compl. at ¶ 17, 20, 22). Plaintiff also contends that defendant Maynard, a supervisor, did nothing to intervene while his subordinates attacked plaintiff. (Compl. at 19).

In an attempt to resolve the wide disparity between the accounts of the October 4, 2012 use of force incident, this court has carefully reviewed surveillance video which shows the entirety of the approximately 21 minutes that plaintiff was in the strip frisk room with defendant Healy and others. (Dkt. No. 49, "Video").  When appropriate, the court may rely on such video evidence to determine whether defendants are entitled to summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (holding that video evidence can properly be considered on summary judgment and may be credited over non-movant's account if the video "blatantly contradicts" the non-movant's version of events); *McKinney v. Dzurenda,* 555 F. App'x 110, 111-12 (2d Cir. 2014) (summary order) ("[V]iewing the video footage together with the other evidence, no reasonable fact-finder could conclude that the defendants used force against [plaintiff] maliciously or sadistically to cause harm")*; Kalfus v. New York and Presbyterian Hosp.*, 476 F. App'x 877, 880-81 (2d Cir. 2012) (the video demonstrated that plaintiff resisted arrest by refusing to stand up or be handcuffed, and that the patrolmen used only reasonable force to overcome his resistance; no reasonable fact finder could conclude that defendants applied excessive force); *Green v. Morse*, 00-CV-6533, 2009 WL 1401642, at *9 (W.D.N.Y. May 18, 2009) (court may rely on video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss plaintiff's excessive force claim).

The Video shows the output of four cameras located at different points in and near the strip frisk room, displayed in separate quadrants.  Most of the relevant portions of the Video are found in the bottom right quadrant, which depicts the interior of the strip frisk room.  Defendants Maynard, St. Mary, Hyde, and Truax are briefly seen on

the other cameras as they respond to the incident from exterior hallways.  Although the Video includes sound, the audio recording appears limited to the exterior hallways.  No relevant audio, such as defendant Healy's orders to plaintiff, can be heard.  The Video also includes a running time stamp at the bottom right of the display, which appears to correspond to the time when the incident took place.  I will cite to this time stamp when describing the events depicted in the Video.

The Video begins as defendant Healy[3] escorted plaintiff into the strip frisk room.  (Video, 9:06:14).  Plaintiff entered the small room, facing the wall.  (*Id*., 9:06:18).  Plaintiff then turned around, and defendant Healy removed his handcuffs. (*Id.*, 9:06:24).  By his gestures, defendant Healy appeared to be ordering plaintiff to place his hands against the wall, and plaintiff complied. (*Id*., 9:06:35).

Plaintiff then removed his shoes, shirt, and pants, while continuing to face the wall. (*Id*., 9:06:42-9:08:01).  After handing each of these items of clothing to defendant Healy for inspection, defendant placed his hands flat against the wall. (*Id.*)  After removing his undershirt and handing it to defendant Healy, plaintiff looked back over his right shoulder, with his right hand flat against the wall. (*Id*., 9:08:07).  At the same time, plaintiff's left hand dropped briefly to his side, in the location of the waistband of his boxer shorts. (*Id.*)  Plaintiff then placed his left hand back against the wall, but his fingers on his left hand appeared to be closed. (*Id*., 9:08:13).

After defendant Healy inspected plaintiff's undershirt, plaintiff turned around to face him. (*Id.*, 9:08:17).  Plaintiff dropped both hands to his side, and appeared to be

---

[3] This court has identified the individuals in the Video based upon their actions, as described in the motion papers.

11

about to remove his boxer shorts. (*Id.*, 9:08:18).  Defendant Healy stopped him, and raised his hands with his fingers spread. (*Id.*, 9:08:19).  Based upon the Video, defendant Healy appeared to be ordering plaintiff to place his hands flat against the wall again.

Plaintiff continued to face defendant Healy, and both men engaged in an animated discussion. (*Id.*, 9:08:23 - 9:09:16).  Still facing defendant Healy, plaintiff moved as if to resume removing his boxer shorts. (*Id.*, 9:09:16). During the discussion, defendant Healy pointed at the wall and put his hands up several times. (*Id.*). Eventually, plaintiff turned toward the wall again and placed his hands against it. (*Id.*, 9:09:31).  Plaintiff's right hand was spread flat against the wall, but his left hand remained closed. (*Id.*, 9:09:32).  Defendant Healy pointed at plaintiff's closed left hand, and plaintiff turned his head over his right shoulder. (*Id.*, 9:09:35).  At the same time, plaintiff slid both his hands down the wall and began to lean backward, away from the wall. (*Id.*)

When plaintiff moved away from the wall, defendant Healy wrapped his left and right arms around him. (*Id.*, 9:09:37).  Defendant Richter then entered the strip frisk room, and grabbed plaintiff on the right side.  All three men slid to the floor, although plaintiff is largely hidden underneath the two correctional officers. (*Id.*, 9:09:41).  Both Healy and Richter appeared to be holding on to plaintiff's arms.  (*Id.*, 9:09:44).  Shortly after, defendants Hyde, St. Mary, and Truax entered the strip frisk room from an adjacent hallway. (*Id.*, 9:09:48).

The Video shows that defendant St. Mary entered on the left of the strip frisk room, and appeared to grab on to one of plaintiff's legs. (*Id.*, 9:10:03).  Defendant Hyde

entered on the right, and appeared to grab on to plaintiff's right arm or leg. (*Id.*, 9:10:08). Defendant Truax knelt between them, and appeared to remove handcuffs from his belt and put them on plaintiff. (9:10:10). Defendant Maynard, wearing a cap, entered the strip frisk room and stood over the correctional officers, but did not make any contact with plaintiff. (*Id.*, 9:10:11).

After plaintiff was handcuffed, defendants Maynard, St. Mary, and Hyde left the strip frisk room. (*Id.*, 9:10:58). Defendants Healy, Richter, and Truax stood plaintiff up, facing the wall. (*Id.*, 9:11:09). Defendant Truax then left the strip frisk room, and defendants Healy and Richter stood with plaintiff for approximately eight minutes. (*Id.*, 9:11:39 -9:20:55). During this time, plaintiff did not offer any resistance, and remained facing the wall. (*Id.*). Eventually, a supervisor arrived and spoke with defendants Richter and Healy. (*Id.*, at 9:20:55). Shortly after this discussion, defendant Healy continued with the strip frisk of plaintiff. (*Id.* at. 9:21:16-9:24:08). When the strip frisk was completed, plaintiff dressed and was escorted off camera. (*Id.* at 9:25:42). The Video continued to run for approximately two more minutes, with no one visible on camera.

Notwithstanding the lack of useful audio, the Video clearly corroborates the defendants' version of the October 5, 2012 use of force.[4] It supports defendant Healy's description of his orders for plaintiff to keep his hands flat against the wall, and his use

---

[4] Although not relevant to the excessive force claim, the Video does not resolve whether plaintiff was hiding marijuana on his person. The Video showed that plaintiff's left hand was closed, but it did not show what, if anything, plaintiff was holding in his left hand, and whether plaintiff dropped anything during the use of force. Defendant Truax's recovery of the two balloons containing marijuana was also not identifiable on the Video. Both parties agreed that the balloons were recovered near the doorway of the strip frisk room. (Truax Decl., at ¶ 9; Pl.'s Decl., at ¶ 34). That doorway is not visible on the Video, due to the camera angle.

of a body hold to restrain plaintiff after plaintiff removed his hands from the wall. (Healy Decl. ¶¶ 22-23). The Video also corroborates defendant Richter's statement that he restrained plaintiff by holding on to plaintiff's right arm. (Richter Decl. ¶ 10). Likewise, the Video is consistent with defendants Hyde, St. Mary, and Truax's descriptions of their limited role in the use of force incident. (Hyde Decl. at ¶ 8; St. Mary Decl. ¶ 8; Truax Decl. ¶ 8).

The Video also contradicts almost all of plaintiff's description of the level of force used by defendants. While it is clear that the defendants used some measure of force against plaintiff, there is no evidence in the Video to support plaintiff's assertion of malicious and sadistic action. For example, the Video does not show defendant Healy grabbing the back of plaintiff's head and slamming his forehead against the floor, or show that defendant Healy "repeatedly raised and lowered the midback region of his body" so that his knee repeatedly slammed into plaintiff's back. (Compl. ¶¶ 15-16). Likewise, there is nothing in the Video that shows defendant St. Mary forcibly squeezing plaintiff's throat, or defendant Hyde punching plaintiff in the face. (Compl. ¶¶ 20-21).

During discovery, plaintiff argued that the Video may have been tampered with, because it did not match his recollection of the October 5, 2012 incident, or his recollection of the video shown during his Tier III disciplinary hearing. (Dkt. No. 27). This court considered plaintiff's argument when it was raised, and rejected it after viewing the Video alongside the copy that was played at the disciplinary hearing. (Dkt. Nos. 29, 38). The District Court affirmed this decision. (Dkt. No. 43). Plaintiff has not challenged the accuracy of the Video in his response to defendants' summary judgment

motion. This court raises it here only to note that such claims, without supporting evidence, would not establish a material issue of fact. *See, e.g., Proctor v. Kelly*, 9:05-CV-692 (GTS/GJD), 2008 WL 5243925, at *5 (N.D.N.Y. Dec. 16, 2008) (plaintiff's conclusory and unsupported allegations that a defendant tampered with the tape of a disciplinary hearing is not sufficient to overcome summary judgment dismissing due process claims); *Gill v. Jones*, 95 Civ. 9031, 2001 WL 1346012, at *8-9 (S.D.N.Y. Nov. 1, 2001) (plaintiff's conclusory claim that his appeals of disciplinary hearings must have been tampered with because they were never received is insufficient to avoid summary judgment on an interference-with-mail claim); *Lewis v. Johnson*, 08–CV–0482 (TJM/ATB), 2010 WL 3785771, at *20 (N.D.N.Y. Aug. 5, 2010) (plaintiff's conclusory allegation that multiple medical professionals in two different prisons fabricated plaintiff's medical records to suppress evidence of his alleged injuries is highly suspect and would, in the court's view, be insufficient to sway any rational fact finder) (Rep't- Rec.), *adopted*, 2010 WL 3762016 (N.D.N.Y. Sept. 20, 2010).

In addition to the Video, this court also considered the de minimis nature of plaintiff's injuries. Although the lack of injury is not fatal to an excessive force claim, the extent and nature of an injury, if any, "'is probative of the amount and type of force actually used . . . and that in turn is likely to reflect on the reasonableness of that force[.]'" *Cunningham v. McCluskey*, No. 05 Civ. 10169, 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (quoting *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009); *Washington v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) (finding de minimis injury to be probative of de minimis force)), (Rep't-Rec.),

*adopted*, 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011).

Plaintiff alleges that he experienced "enormous pain" from the defendants' use of force, and suffered a "deep gash" when his forehead was slammed into the floor. (Compl. ¶¶ 14-16, 20-21). Plaintiff refused medical treatment immediately after the incident, but the responding nurse noted a half-inch scratch on plaintiff's left forehead, which had stopped bleeding. (Dkt. No. 47-1, Smith Decl., Ex. A). The nurse advised plaintiff to wash the cut with soap and water, and to use sick call if he required medical treatment. (*Id*. at 2; Dkt. No. 47-2, Smith Decl., Ex. B). Under Upstate policy, plaintiff was automatically scheduled for a sick call visit the day after a use of force. (Dkt. No. 47, Smith Decl., ¶ 14). During this follow-up nurse visit, plaintiff did not appear in any apparent distress, and refused medical attention. (Dkt. No. 47-3, Smith Decl, Ex. C, at 2). These medical reports are consistent with photographs taken shortly after the incident, which show a reddish cut or bruise on plaintiff's forehead. (Dkt. No. 46-5, Maynard Decl., Ex. A, at 49). Such de minimis injuries do not support plaintiff's allegations of excessive force. *See Bermudez v. Waugh*, No. 09:11-CV-947 (MAD/DEP), 2013 WL 654401 at *5 (N.D.N.Y. Feb. 21, 2013) (finding that tackling of inmate that caused minor bruising constituted *de minimis* force); *James v. Phillips*, No. 05 Civ. 1539, 2008 WL 1700125 at *4 -*5 (S.D.N.Y. April 9, 2008) (finding de minimis use of force when prison guard shoved inmate into cell door, causing swelling of the inmate's chin); *Bove v. New York City*, 98 Civ. 8800, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (the plaintiff's alleged injuries that are supported by the objective hospital records–a single bruise to head–lead the court to conclude that the force used by the officers on the night in question was at worst, de minimis).

Based on the video evidence regarding the extent of the force applied to the plaintiff and the medical evidence of the relatively minor nature of his injuries, no reasonable fact finder could conclude that the force applied to plaintiff was more than de minimis, as required to satisfy the objective element of the Eighth Amendment standards for cruel and unusual punishment.  In addition, no reasonable fact finder could conclude that the defendants used force against the plaintiff maliciously and sadistically to cause harm, as required to satisfy the subjective element of the Eighth Amendment standards for excessive force.  Therefore, this court rejects plaintiff's argument that his excessive force claim should be resolved by a jury.  *See Scott*, 550 U.S. at 379-81 (when opposing parties tell two different stories, one of which is blatantly contradicted by the record evidence (including surveillance video), so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere  conclusory allegations or denials are insufficient to withstand a motion  for summary judgment once the moving party has set forth a documentary case").  Because of this court's conclusion that no excessive force violation occurred, plaintiff's claim that defendant Maynard failed to intervene to protect him should also be dismissed.  Accordingly,  this court recommends that plaintiff's Eighth Amendment claims be dismissed in their entirety.

## IV.  <u>Retaliation</u>

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action"

taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137.

## B.    Application

Plaintiff makes two retaliation claims: that defendants (1) used force against him and (2) framed him for marijuana possession, all in retaliation for previously filed grievances. (Compl. ¶ 8). Plaintiff has never identified any grievances that he had filed against defendants Hyde, Maynard, Richter, St. Mary, or Truax prior to the October 5, 2012 incident. Alleged retaliation for "unspecified grievances" is not sufficient to state a claim for retaliation. *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, at *1 (N.D.N.Y. Jan. 21, 2015); *see also Barnes v. Monroe County*, 85 F. Supp. 3d 696, 733 (W.D.N.Y. 2015) (citing *Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010)) (Dismissing retaliation claim where plaintiff did not allege when the underlying grievances were filed that caused the retaliation). Therefore, this court recommends dismissal of the retaliation claims against defendants Hyde, Maynard, Richter, St. Mary, and Truax.

The retaliation claims against defendant Healy require additional analysis. Plaintiff has identified a contemporaneous grievance that he had filed against defendant Healy, alleging deprivation of meals.[5] (Dkt. No. 50, Pl.'s Mem. of Law, at 11).  During plaintiff's disciplinary hearing, defendant Healy confirmed that plaintiff had filed this grievance no more than a month prior to the October 5, 2012 strip frisk.[6] (Dkt. No. 46-15, Mainville Decl., Ex. C, "Hearing Transcript" at 58).  It is well-established that the filing of inmate grievances is constitutionally protected conduct under the First and Fourteenth Amendments.  *See, e.g., Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  The court must then consider whether plaintiff has established a nexus between this grievance and either the use of force or the alleged false charge of marijuana possession.

In addressing the requirement of a causal connection between the protected speech and the alleged adverse actions in the context of a summary judgment motion, this court may consider: "(1) any statements made by the defendant concerning his motivation for his conduct; (2) the temporal proximity between the protected activity

---

[5]  This grievance against defendant Healy does not change the analysis with regard to plaintiff's retaliation claims against the other defendants.  *See, e.g., Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in).

[6] During the disciplinary hearing, the hearing officer asked "How long ago was that grievance? Can you recollect?"  Defendant Healy responded, "Eh, maybe a month or so."  (Hearing Transcript at 58).  It is unclear if defendant Healy is stating that the grievance was filed a month prior to the October 5, 2012 incident, or a month prior to the October 25, 2012 hearing.

and the alleged adverse action; (3) the plaintiff's prior good disciplinary record; and (4) whether the plaintiff was vindicated at the subsequent disciplinary hearing." *Roseboro v. Gillespie*, 791 F. Supp. 2d at 366, 369 (collecting cases). This court has considered each of these four factors, but finds them inconclusive.

Plaintiff has alleged that defendant Healy made an incriminating statement while they were leaving the strip frisk room: "That's what you get for writing shit. Don't say shit to the nurse if you know what's good for you." (Compl. at 23; Dkt. No. 46-14, Mainville Decl., Ex. B. at 10). Defendant Healy has consistently denied this accusation. (Dkt. No. 46-14, Mainville Decl., Ex. B, at 15; Healy Decl., ¶ 39). As discussed previously, plaintiff filed the grievance against defendant Healy within a month of the October 5, 2012 incident. While not dispositive, plaintiff has shown temporal proximity between the grievance and the alleged retaliatory conduct.

There are other factors that weigh against the legitimacy of plaintiff's retaliation claim. The record shows that plaintiff has a lengthy disciplinary history, which includes offenses similar to those at issue in this case: refusal of direct orders, assaults on staff, contraband possession, and drug possession. (Dkt. No. 46-13, Mainville Decl., Ex. A). At the October 25, 2012 disciplinary hearing, the hearing officer noted that plaintiff was a "long term SHU inmate whose disruptive behavior has caused him to lose all other privileges and or [sic] good time." (Hearing Transcript, at 84). Plaintiff was found guilty of all charges arising from the October 5, 2012 incident, and this determination was upheld on appeal. (Dkt. No. 46-14, Mainville Decl., Ex. B, at 1;. Hearing Transcript at 84).

In support of his summary judgment motion, defendant Healy argues that he

would have taken the same actions during the October 5, 2012 incident regardless of any prior grievances filed against him.  Based upon my analysis of the Video, set forth above, this court agrees with defendant's Healy's argument with regard to the use of force.  The Video clearly shows that defendant Healy's response was prompted by plaintiff's repeated failure to follow orders during the strip frisk, and plaintiff's movement away from the wall in a manner that could present a threat.  Therefore, I recommend that plaintiff's claim that defendant Healy used force against defendant in retaliation for a prior grievance be dismissed.

The same reasoning cannot be applied to the claim that defendant Healy retaliated against plaintiff by framing him for marijuana possession.  While there are legitimate reasons to question plaintiff's factual allegations, this court notes that plaintiff's version of events has remained consistent throughout the disciplinary hearing, the grievance process, and this litigation.  Plaintiff has consistently claimed that he was not holding or hiding any contraband; that the balloons containing marijuana were planted in the strip frisk room; and that defendant Healy made an incriminating statement following the incident. (Dkt. No. 46-14, Mainville Decl., Ex. B; Hearing Transcript; Compl. ¶¶ 8, 23; Pl.'s Decl. at ¶¶ 21, 32, 34).  Similarly, defendant Healy has denied any retaliatory motive or wrongdoing throughout the administrative process and this litigation.  He has also consistently claimed that he detected a bulge in plaintiff's waistband during the initial pat-frisk; that plaintiff attempted to hide an object during the strip frisk; and that plaintiff dropped that object, which turned out to be balloons containing marijuana, during the use of force. (Dkt. No. 46-14, Mainville Decl., Ex. B, at 16; Hearing Transcript, at 52-64; Dkt. No. 46-17, Griffin Decl., Ex. A,

at 29; Healy Decl., at ¶¶ 7, 16-17, 24).

The sharp disparity between the accounts provided by plaintiff and defendant Healy creates a credibility issue that is ill-suited to resolution on summary judgment. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (denying summary judgment where disparity between plaintiff's detailed retaliation claim and defendant's denial of the allegations created credibility issue). Therefore, this court recommends that this single retaliation claim against defendant Healy be found sufficient to overcome defendant's motion for summary judgment, even when viewed with the skeptical eye generally applicable to such allegations.

## V.     Conspiracy

### A.     Legal Standards

#### 1.     Section  1983

In order to support a claim for conspiracy pursuant to section 1983, there must be "(1) an agreement . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002); *Cusamano v. Sobek,* 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity, as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient. *See Iqbal v. Hasty,* 490 F.3d 143, 177 (2d Cir. 2007); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir. 1999). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F.

Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).  Conclusory, vague, and general

allegations are insufficient to support a conspiracy claim.  *Ciambriello,* 292 F.3d at 325.

### 2.   Section 1985

"Section 1985 prohibits conspiracies to interfere with civil rights."  *Davila v.*

*Secure Pharmacy Plus,* 329 F. Supp. 2d 311, 316 (D. Conn. 2004).  To state a claim for

relief under Section 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of the
> laws, or of equal privileges and immunities under the laws; and (3) an act
> in furtherance of the conspiracy; (4) whereby a person is either injured in
> his person or property or deprived of any right or privilege of a citizen of
> the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828-29

(1983); *see also Iqbal,* 490 F.3d at 176.  To demonstrate that a conspiracy existed, "the

plaintiff must prove a mutual understanding or meeting of the minds to violate [his or]

her civil rights."  *Salgado v. City of New York.*, No. 00-CV-3667, 2001 WL 290051, at

*8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).  "In addition, the conspiracy must be

motivated by some class-based animus."  *Iqbal,* 490 F.3d at 176.

### B.   Application

Plaintiff alleges that defendants Healy, Richter, and Maynard conspired to

subject plaintiff "to repeated searches and to a beating" in retaliation for the grievance

filed against defendant Healy, and then called on the remaining defendants to join in

their plan. (Dkt. No. 50, Pl.'s Mem. of Law, at 11).  These allegations of conspiracy are

wholly conclusory and, therefore, insufficient to state a claim.  *See X Men Sec., Inc. v.*

*Pataki,* 196 F.3d 56, 71 (2d Cir. 1999).  Moreover, there is no evidence that any alleged

conspiracy was motivated by racial- or class-based animus. Accordingly, this court recommends that defendants' motion for summary judgment dismissing plaintiff's claims of conspiracy be granted.

## VI.  **Qualified Immunity**

Defendants also argued that they were entitled to qualified immunity on all claims. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For most of plaintiff's claims, I have found that defendants did not violate plaintiff's rights in the first instance. Therefore, I need not reach the issue of whether a reasonable person would have known of the violation. With regard to the one surviving claim, if the allegation that defendant Healy framed plaintiff for marijuana possession in retaliation for filing grievances were proven true, such action would not be "objectively reasonable," and qualified immunity would not apply. *See Willey v. Kirkpatrick*, 664 F.Supp. 2d 218, 224 (W.D.N.Y. 2009) (filing of multiple false misbehavior reports could not be considered objectively reasonable).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 46) be **DENIED** only with respect to the retaliation claim that defendant **HEALY** falsely accused plaintiff of marijuana possession, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 46) be **GRANTED** in all other respects, and the complaint dismissed in its entirety as against defendants **HYDE, MAYNARD, RICHTER, ST. MARY, and TRUAX**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:      June 6, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge